(98 South. 45)

No. 25582.

## YOUNG et al. v. BOSSIER CITY.

(Nov. 5, 1923.)

*(Syllabus by Editorial Staff.)*

Municipal corporations ⊚➝921(3)—Authority to construct waterworks held not to authorize use of bond issue for connection with system of another municipality.

In view of Const. 1913, art. 281, forbidding a municipal corporation from issuing bonds for other purposes than that stated in the proposition to the taxpayers, where the taxpayers authorized issuance of bonds for the construction of a system of waterworks for a village, the proceeds could not be used in laying a system of pipes and connecting them with the waterworks system of another municipality.

Appeal from Second Judicial District Court, Parish of Bossier; J. E. Reynolds, Judge.

Suit by W. T. Young and others against the Village of Bossier City. From a judgment for defendant, plaintiffs appeal. Judgment annulled and set aside, and injunction perpetuated.

Foster, Looney & Wilkinson, of Shreveport, for appellants.

C. B. Prothro and Murff, Mabry & Perkins, all of Shreveport, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. In March, 1917, the mayor and board of aldermen of Bossier City adopted an ordinance submitting to the property taxpayers of the municipality a proposition to incur debt and to issue negotiable bonds therefor, in the sum of $30,000, "for the purpose of erecting, operating, maintaining, repairing, or replacing a system of waterworks, piping, tanks, wells, engines, and all things necessary or appurtenant thereto." The election was held in April, 1917. A property val-

uation of $25,165 and 29 votes were cast for the proposition, and a property valuation of $2,330 and 3 votes were cast against it. The mayor and board of aldermen were authorized, therefore, by the taxpayers, to issue negotiable bonds, in the above amount, for the purpose stated.

No steps were taken to carry out the purpose for which the bonds were voted until 1922, probably due to the increased cost of constructing a system of waterworks, caused by the World War. In that year the village of Bossier City, through its governing authorities, entered into two contracts, one of which was with the city of Shreveport and the other with McCain Bros. By the first, it was agreed that the city of Shreveport should furnish water to the village of Bossier City, out of its surplus supply only, at certain rates, subject to increase, should the rates to consumers in Shreveport be increased. The contract was entered into for a period of five years, subject to the right reserved by each party to withdraw from it on giving the other six months' written notice, and subject to the additional right, granted Bossier City, to terminate the contract, should the city of Shreveport fail to furnish the village an adequate supply of water. While the village obligated itself to pay the city for the water furnished, yet it does not intend to pay for it out of the proceeds of the bond issue, but, as we understand it, out of funds to be obtained by charging the consumers in the village for the water used by them. By the second contract, McCain Bros. agree to furnish and lay the pipes for a waterworks system in the village, and to lay a pipe to the center of Red river, and connect it with a pipe to be laid by Shreveport, also to the center of the river, thereby furnishing the means of getting the water to the village. To pay for the work contracted for, including the laying of the pipe to the center of the river, will require more than

the proceeds of the bonds, all of which proceeds, or the bonds themselves, the governing authorities of the village contemplate using for that purpose.

After the execution of the contract with the city of Shreveport, but prior to signing the one with McCain Bros. 25 of the qualified voters and taxpayers of the village (7 less than the total number of voters voting at the election) sued out a writ of injunction to prohibit the governing authorities of the village from carrying into execution their plan to use the bonds voted, or the proceeds thereof, to lay pipes to connect the village with the waterworks of the city of Shreveport, and from using the bonds, or the proceeds thereof, for any other purpose than the one stated in the ordinance calling the election. The petition for injunction, after setting forth the plan to provide the village with water by making connection with the Shreveport waterworks system, and after setting out the purpose for which the bonds were voted, alleges:

"That the special taxes would not have been voted by the residents and taxpayers of Bossier City, if it had not been for the guaranty furnished by the ordinance of said village in calling said election that said funds thus to be derived should be used for the erection, operation, maintenance, repairing, and replacing of a system of waterworks, and that said taxes were not voted and said negotiable bonds were not issued for the purpose of merely making a connection with the waterworks of the city of Shreveport, and that the attempt of the council or board of aldermen of said village of Bossier City to use the special taxes or the proceeds of the bonds in question for that purpose is a wrongful diversion thereof."

The bonds were voted under article 289 of the Constitution of 1913, the second paragraph of which, in so far as it is necessary to quote it, reads:

"No bonds shall be issued for any other purpose than that stated in the * * * proposition to the tax payers, and published for thirty (30) days as aforesaid, or for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for constructing, improving and maintaining public roads and highways, paving and improving streets, roads and alleys, purchasing and constructing systems of waterworks, sewerage, drainage, navigation, lights, public parks and buildings, together with all necessary equipment and furnishing, bridges and other works of public improvement, the title to which shall rest in the subdivision creating the debt." * * *

It is obvious that the quoted paragraph from the Constitution, under which the bonds were voted, prohibits the issuance of bonds for other purposes than those stated in the paragraph, or to accomplish any other purpose than the one stated in the proposition submitted to the taxpayers. In the instant case, the purpose stated in the proposition submitted was to authorize the issuance of bonds to construct, operate, maintain, repair, or replace a system of waterworks, piping, tanks, wells, engines, and all things necessary or appurtenant thereto. As there was no system of waterworks in the village to replace, and as the Constitution, under which the bonds were voted, did not authorize their issuance for the purpose of operating or maintaining such a system, and as the pipes referred to are manifestly a part of the system that it was proposed to construct, boiled down, the proposition submitted to the taxpayers and authorized by them amounts to nothing more than one to construct a system of waterworks, the title to which shall rest in the village. The question, therefore, presents itself, whether the plan of the mayor and board of aldermen of the village to lay pipes and connect with the Shreveport waterworks system is a carrying out of the purpose contained in the proposition submitted to and approved by the taxpayers? In Cruse v. Police Jury, 151 La. 1056, 92 South. 679, it was held that where a police jury had submitted to the property taxpayers of a parish a proposition to issue bonds to build roads, and by separate ordinance had designated the roads to be constructed, and the

amounts to be expended on each, which included a well-known road, none of the proceeds of the bonds could be used to construct a new road, between the termini of the old, though only two miles distant from the old road, at the farthest point, for the reason that to so use any of the proceeds would be a departure from the purpose for which the bonds were voted. And in O'Beirne v. Police Jury, 154 La. 329, 97 South. 461, it was held that, where a police jury is authorized by the taxpayers to issue bonds to build a certain road, it could not use the entire proceeds of the bonds to build only a part of the road, although it has an agreement with the highway commission to build, at some indefinite time, with the funds of the latter, the rest of the road, since to so use the entire proceeds, and rely upon an agreement to construct, at some uncertain time, the remainder of the road, although entered into with an agency of the State, would be a departure from the purpose for which the bonds were voted.

In the case at bar, the taxpayers did not authorize the issuance of the bonds for the purpose of laying a system of pipes and connecting them with the Shreveport waterworks system. No such proposition was even submitted to them. What they authorized was the construction of a waterworks system, as that term is ordinarily understood, with its own water supply and tank as well as the pipes that are about to be laid, all of which is to be owned by the village. If the bonds, or their proceeds, are inadequate for the construction of such a system, which is likely the case, then the mayor and board of aldermen should take appropriate steps to supplement the fund sufficiently to enable them to comply with the purpose for which the bonds were voted.

It is suggested in defendant's brief that the contract with the city of Shreveport may be terminated on six months' notice, and therefore that the plan of the mayor and board of aldermen of Bossier City may be considered as only temporary in its nature. Nevertheless, to put into operation that plan will exhaust all of the proceeds of the bonds, which will force the taxpayers, should the contract with the city of Shreveport be terminated, to vote additional bonds in order to obtain the benefits to be had from the money expended for the laying of the pipes. The mayor and board of aldermen are without right to force the taxpayers into such a position, or to add, by carrying out the plan of the former, to the difficulties already in the way of the taxpayers. If additional bonds are necessary to accomplish the purpose authorized at the election, the taxpayers should not be placed in a position, which virtually forces upon them no alternative, except that of voting the bonds, but, instead, a proposition to vote them should be submitted before their money is expended, or if this be not done, some other appropriate step should be taken.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that the writ of injunction that issued herein be perpetuated; defendant to pay the costs in both courts.