Argued July 17; writ dismissed July 31, 1933

# BARDE ET AL. *v.* FUNK ET AL.

(24 P. (2d) 334)

*George A. Pipes* and *Arthur W. Orton,* both of Port-
land, for plaintiffs.

*L. E. Latourette* and *Frank S. Grant,* both of Port-
land, for defendants.

KELLY, J. On the 20th day of May, 1932, the voters of the city of Portland adopted section 344 of the municipal charter of said city, which is as follows:

"Section 344. Bonds for Public Work. The Council is hereby authorized, in the name of and under the corporate seal of the City of Portland, to issue and dispose of bonds of the City of Portland in an amount not exceeding one million dollars ($1,000,000), in the denomination of one hundred dollars ($100.00), five hundred dollars ($500.00) or one thousand dollars ($1,000.00), as the Council may determine, and in such form as the Council shall elect, with interest coupons attached thereto. The bonds shall be issued serially. The bonds shall be signed by the Mayor and countersigned by the Auditor, and each interest coupon shall have the signature of the Mayor and the Auditor engraved thereon, and the City of Portland, Oregon, by each of the bonds shall be held and considered in substance and effect to undertake and promise, in consideration of the premises, to pay to the bearer of each of the bonds, at the expiration of the time specified therein, the sum named therein in gold coin of the United States of America, together with interest thereon in like coin at the rate mentioned in the bond, which interest shall be paid half yearly. At the time

of the providing for the issuance of the bonds the Council shall, subject to the provisions hereof, fix the rate of interest to be paid, which rate shall not exceed six per cent (6%) per annum, the dates for the redemption of the bonds, which dates shall not be less than six (6) nor more than twenty (20) years from the date of the bonds and the portion of the bonds which shall be redeemed each year beginning with the sixth year from the date thereof. The bonds, before sale, shall be advertised for not less than two (2) weeks and shall be sold to the highest responsible bidder, but not for less than par and accrued interest. The Coun-- cil before advertising the sale of the bonds, may provide that competitive bidding shall be partially or wholly upon the rate of interest, and in that case the rate shall be fixed according to the bid of the successful bidder, and the award shall be made upon the bid which in the opinion of the Council is most advanta- geous to the City. The Council shall have the right to reject all bids and to proceed to readvertise when bids are not satisfactory, or to sell the bonds, as herein- after provided. If, after having advertised and re- ceived bids for the purchase of the bonds, the Council deems the price bid unsatisfactory, the Council then has the power to fix a sale price for the bonds, equiva- lent in the opinion of the Council to not less than the highest bid, and having fixed the price, any or all of the bonds may be sold by the City Treasurer without further advertisement, or the Council may again ad- vertise any or all of the bonds for sale and· sell them. In no event shall any of the bonds be sold for less than par and accrued interest. The proceeds from the sale of the bonds shall be expended in the payment of the cost of the expense of advertising, issuing and selling the bonds and in the payment of any expense incurred by the city for the holding of a special election, where- by the issuance of the bonds was authorized. The bonds shall only be sold by the Council in such amounts and at such times as shall be recommended by the Council's Public Relations Committee of the Civic Emergency Committee, which is now composed of

Aaron M. Frank, John A. Zehntbauer, Dan J. Malarkey, Amedee M. Smith, E. C. Sammons, Frank H. Ransom and T. H. Banfield. The proceeds from the sale of the bonds shall constitute and go into a special fund, and from such fund, in addition to the foregoing authorized payment of expenses, disbursements are hereby authorized to be made for such public work and projects as shall, in the opinion of the said Council's Public Relations Committee of the Civic Emergency Committee, as evidenced by its request on the Council for appropriations and in the Council's opinion as evidenced by its making the requested appropriation, provide the maximum of hand labor for needy unemployed, with due regard to the desirability of the work or project and to giving the city the best returns under the circumstances for the money expended. Such other disbursements may be made from said fund as shall, in the judgment of the Council and its Public Relations Committee of the Civic Emergency Committee be necessary to carry out a general program of relief to the unemployed in a practical and efficient manner; and the unemployed assigned to any such work or project shall be selected and employed under such rules and regulations and at such wages as shall be fixed and determined from time to time by the Council's Public Relations Committee of the Civic Emergency Committee. The provisions of Chapter 4 of the charter shall not apply to such employment. The Council shall have power and authority to enact such ordinance or ordinances from time to time as may be needed to give full effect to the authority conferred by this section. The amount of all of the bonds authorized by this act shall not be counted in calculating the limited indebtedness otherwise applicable to the city fixed by the charter or the constitution, but shall be excluded from said limitations.''

Pursuant to the terms of said section 344, bonds were issued and sold in the aggregate amount of $845,000. The balance of the authorized issue amounting to $155,000 remains unsold.

On April 5, 1933, ordinance No. 63,980 was passed, adopting a plan for joint issuance by Multnomah county, Oregon, and the city of Portland of self-liquidating scrip to be used for the relief of unemployment and other purposes. On April 13, 1933, said ordinance No. 63,980 was amended by ordinance No. 64,026.

The self-liquidation of this scrip is proposed to be accomplished by the cancellation of a stamp affixed to such scrip at each successive transfer thereof until stamps amounting in the aggregate to the face value thereof have been affixed thereto and canceled.

On July 12, 1933, the council of the city of Portland passed ordinance No. 64,628 directing the city auditor to deposit said bonds of the face value of $155,000 with the city treasurer and directing the city treasurer to accept said bonds and keep them in his possession as a guaranty redemption fund for all scrip issued by the city of Portland under the authority of said ordinances Nos. 63,980 and 64,026; also authorizing and directing said treasurer to sell said bonds if and when needed in order to liquidate said scrip; and prescribing that said scrip shall not be redeemed from the said bonds until such scrip shall have been outstanding for two years.

Defendants contend that the proposed plan hereby sought to be enforced is in direct violation of said section 344 of said charter, in indirect violation of sections 69 to 75 of said charter, and in conflict with section 10, article I of the federal constitution.

Plaintiffs call attention to the provision in said section 344 that "such other disbursements may be made from said fund as shall in the judgment of the

council and its Public Relations Committee of the Civic Emergency Committee, be necessary to carry out a general program of relief to the unemployed in a practical and efficient manner''; and to the further provision authorizing the council to pass such ordinances from time to time as might be needed to give full effect to the authority conferred by said section; and, based upon these last mentioned provisions in said section 344, plaintiffs urge that the proposed use of the bonds as security for the redemption of scrip is not a different one from that for which the bonds were intended.

■ It is not subject to debate that there can be no diversion from the purpose of a bond issue of funds derived therefrom. *State ex rel. City of Cushing v. King*, 162 Okla. 69 (19 P. (2d) 138, 139) ; *Town of Camden v. Fairbanks, Etc.*, 204 Ala. 112, 118 (86 So. 8, 11) ; *Young v. Bassier City*, 154 La. 625 (98 So. 45, 46) ; *Stephens v. Bragg City*, 224 Mo. App. 469 (27 S. W. (2d) 1063, 1064) ; *City of Beaumont v. Matthews Cartwright Land & Imp. Co.*, 224 S. W. 589, 590; *Hayes v. Seattle*, 120 Wash. 372 (207 P. 607) ; *Allen v. City of Atlanta*, 166 Ga. 28, 33 (142 S. E. 262).

■ A pledging of bonds is not a sale and is not a compliance with the provision of the charter directing a sale. *City of Sanford, Fla. v. Chase National Bank*, 44 Fed. (2d) 206, 212.

In principle, the case at bar is similar to a New York case arising in the early days of railroad construction. There, authority, on the part of town officers, was procured by charter amendment to borrow money upon the credit of the town, and to pay it over to a railroad corporation to be expended by it in grading and constructing a railroad taking in ex-

change its stock at par. It was held that under the authority thus granted it was not within the power of the municipal officers to make a direct exchange of the bonds of the town, even for an equal nominal amount of stock as this would leave it within the power of the railroad corporation to sell such bonds at a discount. *Starin v. Genoa,* 23 N. Y. 439; *Gould v. Sterling,* 23 N. Y. 439, 456.

■ Moreover, we are not aware of any statutory authority for the city of Portland, either alone or acting in cooperation with Multnomah county, to issue scrip. Bills to be used as currency cannot be issued by municipalities unless by express authority. Vol. 5, McQuillin Mun. Corp. (2d Ed.) 929, section 2320, citing *Lindsey v. Rottaken,* 32 Ark. 619; *Cothran v. Rome,* 77 Ga. 582; *Dively v. Cedar Falls,* 21 Iowa 565; Ibid, 27 Iowa 227; *Allegheny City v. McClurkan,* 14 Pa. St. 81; *Thomas v. Richmond,* 79 U. S. 349 (20 L. Ed. 453); *McCormick v. Allegheny City,* Fed. Cas. No. 8,717.

■ As we understood the oral argument of plaintiffs, the issuance of the scrip in suit is not deemed to be the authorized act of the officials of the county or the city, but only the act of public spirited citizens who seek to use the city officers as agents merely in carrying out the enterprise. This renders the obligations incurred by the issuance and circulation of such scrip mere private debts; and certainly there is no authority in the charter or elsewhere for pledging the credit of the city of Portland for the payment of private indebtedness.

■ The proposed hypothecation of the municipal bonds in suit varies and changes the course authorized in section 344 of the charter in the following particulars:

1. The charter provision authorizes the Council before advertising the sale of the bonds to "provide that competitive bidding shall be partially or wholly upon the rate of interest, and in that case the rate shall be fixed according to the bid of the successful bidder". The scrip plan provides that the Treasurer shall sell the bonds, and the bonds must have the rate of interest specified before they are turned over to the Treasurer. The Council, therefore, is deprived of the power to provide for competitive bidding upon the rate of interest.

2. The charter provides that "the award shall be made upon the bid which in the opinion of the Council is most advantageous to the city". The scrip plan requires that the Treasurer shall do the selling, thus preventing the Council from exercising its opinion concerning the bid most advantageous to the city.

3. The charter provides that "the Council shall have the right to reject all bids and to proceed to re-advertise when bids are not satisfactory, or to sell the bonds as hereinafter provided". The scrip plan deprives the Council of the power to determine whether a bid is satisfactory and whether readvertisement should be had or the bonds otherwise disposed of as provided by the charter.

4. The charter provides that "if after having advertised and received bids for the purchase of the bonds, the Council deems the price bid unsatisfactory, the Council then has the power to fix a sale price for the bonds, equivalent in the opinion of the Council to not less than the highest bid, and, having fixed the price, any or all of the bonds may be sold by the City Treasurer without further advertisement, or the Council may again advertise any or all of the bonds for sale and sell them". The scrip plan prevents the Coun-

cil from exercising any of the power here given. It is true that this provision authorizes the Council to have the City Treasurer sell the bonds under certain circumstances, but such circumstances do not exist. On the contrary, the petition and alternative writ show that the bonds are being turned over to the Treasurer not for the purpose of sale but for the purpose of a guaranty fund for a period of at least two years.

5. The charter provides that "the proceeds from the sale of the bonds shall be expended in the payment of the cost of the expense of advertising, issuing and selling the bonds, and in the payment of any expense incurred by the city for the holding of a special election, whereby the issuance of the bonds was authorized". The scrip plan requires that the bonds shall be held for at least two years and when and if a sale is made by the Treasurer the proceeds shall be applied not for any of the purposes above stated, but for the purpose of redeeming scrip which has been outstanding for a period of two years and which does not have the proper amount of stamps so as to obtain a redemption from the stamp redemption fund.

6. The charter provides that "the bonds shall only be sold by the Council in such amounts and at such times as shall be recommended by the Council's Public Relations Committee of the Civic Emergency Committee * * *". The scrip plan directly violates this provision because the City Treasurer is to sell the bonds at his own initiative and in accordance with the scrip plan without any recommendation from the committee mentioned.

7. The charter provides that "the proceeds of the sale of the bonds shall constitute and go into a special

fund, and from such fund, in addition to the foregoing authorized payment of expenses, disbursements are hereby authorized to be made for such public work and projects as shall in the opinion of the said Council's Public Relations Committee of the Civic Emergency Committee as evidenced by its request on the Council for appropriations and in the Council's opinion as evidence by its making the requested appropriation, provide the maximum of hand labor for needy unemployed with due regard to the desirability of the work or project and to giving the city the best returns under the circumstances for the money expended''. The scrip plan ignores this arrangement and sets up an entirely different arrangement. True it is that the arrangement of the scrip plan contemplates the carrying out of projects which have met the previous approval of the commttee referred to. The scrip plan, however, does not contemplate any further action on the part of this committee. On the contrary, it contemplates action by other and different committee which are set up by the scrip plan. The charter provision contemplates action by the Council as well as by the Public Relations Committee, but by the scrip plan further action by the Council, as well as further action by this committee, is eliminated.

8. The charter provides that ''such other disbursements may be made from said fund as shall, in the judgment of the Council, and its Public Relations Committee of the Civic Emergency Committee be necessary to carry out a general program of relief to the unemployed in a practical and efficient manner * * *''. The scrip plan avoids this provision by eliminating the activity, as well as the power, of both the City Council and the Council's Public Relations Committee.

13. Whether we conclude that the scrip in suit is issued by the city or county or both together as an official act; or by public spirited citizens as a private enterprise, we are constrained to hold that there is no authority by which the auditor of the city would be warranted in depositing the bonds in question with the treasurer as security for the payment of that portion of the scrip, if any, which may prove not to be self-liquidating nor is there any authority by which the treasurer would be warranted in accepting and retaining such bonds for such purpose.

This case is to be distinguished from those cases wherein it appears that municipal bonds have been issued and sold and the court is called upon to decide between the municipality issuing and selling them and the bondholders who have parted with property or money in acquiring them. The instant case seeks the aid of the extraordinary writ of mandamus to compel the hypothecation of the bonds in suit in spite of the protest of the officers of the city urging that they are without authority to hypothecate them.

We are impressed with, commend, and share the position of the experienced and learned city attorney of Portland, who frankly states that his heart and sympathy are with the unemployed, and that he is in favor of any measures which may furnish relief in these times of stress. This court is composed of men, each of whom has felt the biting effect of the general depression and each of whom sympathizes with and to the extent of his ability contributes to the relief of the unemployed. As it is with the distinguished officer just mentioned, so is it with this court. We sympathize with the unemployed, but our sympathy cannot alter the course of our sworn duty to declare the law as it

is and not as the distressing circumstances attendant upon the case at bar cause us to wish it to be. We are unable to construe the charter provision in suit as conferring any authority upon the city to pledge the bonds in the manner sought by the suit herein or at all.

This renders it unnecessary to discuss the objections of defendants that the scrip plan is a violation of section 10 of article I of the federal constitution.

The demurrer to the alternative writ is sustained and the writ dismissed.