Argued and submitted July 1, 1998, affirmed January 13, 1999

FRIENDS OF MORNINGSIDE HILL,
an Oregon nonprofit corporation,
Lloyd Chapman and Brad Nanke,
taxpayers and voters,
*Appellants,*

*v.*

CITY OF SALEM,
a body public,
*Respondent.*

(97C-12068; CA A100792)

973 P2d 367

Paul R. J. Connolly argued the cause for appellants. With him on the briefs were Daniel A. Doyle and Connolly & Doyle, LLP.

Leslie Stevens, Assistant City Attorney, argued the cause for respondent. With her on the brief was Stephanie Smythe, City Attorney.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiffs[1] brought this action seeking declaratory and injunctive relief in relation to defendant City's proposed widening of an intersection at Madrona Avenue and 12th Street in Salem. After a trial to the court,[2] the court held in favor of defendant. We affirm.

In 1992, the Salem electorate passed a General Obligation Street Improvement Bond program that authorized use of any excess funds for "additional transportation/safety improvements to the City's street system." In 1995, the Salem electorate passed a General Obligation Pedestrian Safety Improvements Bond Authorization for which the Notice of Election and Ballot Title provided:

"Question: Shall the City be authorized to contract general obligation bonded indebtedness in an amount not to exceed $34,153,000? * * *

"Summary: This measure, if approved, would authorize the City to issue general obligation bonds in an amount not to exceed $34,153,000. Bond proceeds would be used to finance the cost of pedestrian safety improvements for school travel routes including, but not limited to, vehicle lane widening, adding sidewalk and bike lanes, installation of traffic control devices, and to pay all costs incidental thereto. The bonds would mature in not more than 15 years."

The explanatory statement in the Voters' Pamphlet included that

"The bond measure addresses the need for pedestrian safety street improvements and related safety projects on school travel routes. * * *

"Listed alphabetically, the street safety projects proposed for funding include:

---

[1] Friends of Morningside Hill is an Oregon nonprofit corporation formed by residents, property owners, taxpayers, and voters in the 12th Street SE area from Vista Avenue SE to Ibsen Street SE in Salem. Plaintiffs Chapman and Nanke are residents and taxpayers adversely affected by the widening of the Madrona intersection.

[2] The trial court referred to the trial as one on stipulated facts, although the court took testimony from one witness.

"12th St., from Vista to Ibsen—improvements include three travel lanes, bike-lanes, curbs and sidewalks[.]"

After passage of the 1995 measure, defendant sought requests for proposals for the improvements. The result included a proposed five-lane roadway at the 12th Street and Madrona Avenue intersection, allowing for two north- and two south-bound lanes with center left-turn lanes.[3] On September 12, 1996, the manager of the Public Works Department met with neighborhood leaders to present the 12th Street project as a five-lane roadway for the first time. On September 18, the City Council received a letter from bond counsel advising that any expenditure of the 1995 bond proceeds on more than three lanes of 12th Street might violate ORS 294.100(2).[4] In January 1997, the Council voted to remove from consideration any Madrona intersection design that did not provide for "two through travel lanes in both the north and south directions[.]" At the same time, the Council voted to "approve using the savings from the 1992 Street Bond proceeds to fund the difference between the three lane proposal and whatever proposal is arrived at."

Plaintiffs then brought this action seeking a declaration enjoining defendant from using the 1992 bond proceeds on the 12th Street project for "improvements not authorized by voters." The trial court held that the "1995 bond monies could not be used for any work on 12th Street other than for three lanes and the pedestrian/bike safety improvements" but that the monies left from the 1992 measure were not limited by the 1995 measure and could be used on the project. Plaintiffs assign error to that ruling.

■ The parties agree that bond proceeds may be used only for the purposes authorized by the voters at a bond election. *Stringham et al v. Union Co. P.U.D. et al*, 182 Or 565,

---

[3] The entire improvement project for 12th Street runs approximately 6,900 feet from Vista to Ibsen, which is to be widened to three lanes. The area at issue here is about 550 feet of that area on either side of the Madrona intersection.

[4] ORS 294.100(2) provides:

"Any public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law, shall be civilly liable for the return of the money by suit of the district attorney of the district where the offense is committed, or at the suit of any taxpayer of such district."

573, 178 P2d 698, 187 P2d 150 (1947) (citing *Barde v. Funk*, 144 Or 233, 239, 24 P2d 334 (1933)). Plaintiffs also do not dispute that the 1992 bond measure allows expenditures for general street improvements. Plaintiffs' argument is that the 1992 and 1995 measures are in conflict and, therefore, the 1992 measure was amended or repealed by implication by the 1995 measure. Defendant contends that plaintiffs begin with the incorrect premise that the 1995 measure precluded construction of the five-lane intersection and that the clear language of the 1995 measure permits the "minor change" of the Madrona intersection. Plaintiffs respond that interpretation of the 1995 measure is not before us on appeal because the trial court found against defendant on that issue, and defendant did not cross-appeal or cross-assign error to that ruling. *See* ORAP 5.57. We need not resolve that dispute. Assuming that the 1995 bond monies could not be used for the Madrona intersection changes, we agree with the trial court that the 1992 bond monies could be used for the project.

■ Plaintiffs contend that, because the text of the 1995 measure shows that monies were to be expended only to build three lanes along 12th Street for the purpose of pedestrian safety and because the 1992 bond measure authorizes monies for general street system improvements anywhere in the City, the "unambiguous language of the two measures are inconsistent and in conflict." Accordingly, plaintiffs conclude, because the 1995 measure was specific in purpose and later in time, it "amended" the 1992 legislation or repealed it by implication, and any use of the 1992 bond proceeds contrary to the purpose expressed in the 1995 bond measure runs afoul of ORS 294.100.

The difficulty with plaintiffs' position is that the two measures are not in conflict. They apply to different matters: The 1992 measure provides monies for general street improvements anywhere in the City, whereas the 1995 measure provides monies to be spent for specific changes on 12th Street. One does not preclude the other. Furthermore, the 1995 measure authorized bond proceeds to be "used together with other available funds for pedestrian safety improvements for school travel routes." The 1992 measure provided that "[a]ll proceeds from the sale of the bonds which remain after completion of therein designated street projects may

then be used for additional transportation/safety improvements to the City's street system." That included "pedestrian safety improvements." Thus, the 1992 measure covers the improvements authorized in the 1995 measure. We conclude that, even assuming that a later bond measure can amend an earlier one, there is no conflict here that requires that construction.

What plaintiffs really seek is, as they state, "to prohibit the City from expanding 12th Street beyond three travel lanes while the 1995 bond measure is the controlling law." In other words, they seek to make the 1995 bond measure define the limits of what changes may be made to 12th Street. The record shows that the Salem Transportation Plan has designated 12th Street SE as a major street with improvement to five lanes. What the 1995 bond measure did was to authorize monies to be spent for particular changes to 12th Street. It did not, however, limit defendant's authority to make other changes to 12th Street, either under the plan or as otherwise required. The trial court did not err in holding that the 1992 monies are available to defendant for the 12th Street changes and denying plaintiffs declaratory and injunctive relief.

Affirmed.