## No. 7579.

### POLICE JURY OF THE PARISH OF JEFFERSON (RIGHT BANK) VS. THOS. McCORMACK ET AL.

The public property of the Parishes of this State is not converted into private property by the legislative territorial division of the Parish to which it belongs, and the consequent cessation of the public use to which it is dedicated. Such property, notwithstanding the change of territory and of use, remains what it was before, public property, *extra commercium* and not subject to seizure.

APPEAL from the Second Judicial District Court, in and for the Sixth and Seventh Municipal Districts of the parish of Orleans. *Houston*, Judge of Fourth District Court, parish of Orleans, acting in the place of *Pardee*, J., recused.

Ellis & Ellis and J. Fisk for Plaintiff and Appellee:

The law governing this case is well settled. It has been held that, under under the legal definition of public things, R. C. C. 453, 454, public squares, courthouses, and jails of a parish are public property, and, as such, cannot be executed for debt.

4 A. 84, Police Jury of Baton Rouge vs. Michel.

30 A. 65, Plaquemines Parish vs. Foulhouze.

30 A. 61, McKnight vs. Parish of Grant.

See, also, 21 A. 244.

It has also been held that this rule is not affected by the consideration

whether or not the public property is in actual use, and that "it suffices that the public has a right to use." 30 A. 67.

It has also been settled, that in issues of this kind, the courts cannot consider the question as to whether or not the public property is necessary for the public use, for this is a political, and not a judicial question. Picket vs. Brown et al. 18 A. 562.

Police Jury of Plaquemines vs. Foulhouze, 30 A. 67.

The Defendant knew, when he bought, that the property was public. The Sheriff's notice of seizure, advertisement, and adjudication to Defendant all describe the property, as the "courthouse and square," etc. (R. 179-150.) He could not plead ignorance of the law, R. C. C. 7, and knowing that the property was public, he knew, also, it was not liable to seizure. He was, therefore, a purchaser in bad faith. R. C. C. 3452.

Brashear vs. Dwight, 10 A. 645.

Walworth vs. Stevenson, 24 A. 253.

He therefore owes the rents and revenues of the property from January 25, 1878.

The doctrine of estoppel does not apply.

Police Juries can only manage or administer ; they cannot alienate. *A fortiori* they cannot, by indirection, by acts of omission, or commission, alienate.

See R. C. C. 429, 431, 445, 2996, 2997.

29 A. 592, 261 ; 26 A. 59.

23 A. 191, 232, 251.

R. S. ⸹ 2734.

2 Kent, Lecture XXXIII. Sec. V. *p. 306.

30 A. 66.

Wm. Mithoff, District Attorney *pro tem.*, on same side.

E. Howard McCaleb for Defendant and Appellant :

The property, not being used any more for a courthouse, ceased to be public, and became the private property of the Parish. Dillon on Municipal Corporations, ⸹⸹ 435, 436. 14 An. 872 ; 8 An. 149 ; 13 La. 328.

Plaintiff is estopped from contesting the validity of the Sheriff's sale, because he appointed an appraiser. 27 An. 314 ; 7 How. 183.

Plaintiff must tender the amount of the purchase price paid by the purchaser before he can contest the validity of the sale. 24 An. 325 ; 21 An. 425 ; 28 An. 854 ; 29 An., 537 ; 30 An. 174.

The opinion of the Court was delivered by

FENNER, J. Prior to 1853, the government of the parish of Jefferson was divided between three distinct corporations, viz.: The Police Jury

626 SUPREME COURT OF LOUISIANA,

Police Jury of the Parish of Jefferson vs. McCormack et al.

of the parish of Jefferson, the city of Jefferson, and the town of Carrollton. These corporations bore the common parish expenses in certain proportions established by law.

The whole parish, as then existing, was within the limits and jurisdiction of the Second Judicial District Court of the State.

It was the duty of the parish to provide suitable accommodations for the administration of justice by the said District Court within her limits, and for that purpose to provide a courthouse and jail. Rev. Stat. 2746.

In 1853, the three corporations above referred to, acting through the medium of a joint committee appointed for the purpose, purchased jointly a square of ground for the purpose of erecting thereon a courthouse and jail ; and subsequently did erect thereon the said buildings.

The conveyance was made to the three corporations jointly, and the price of the land as well as the expense of erecting the buildings were paid for by them " according to the regular proportion established by law," as recited in the deed.

By subsequent legislative acts, No. 138 of 1856, and No. 147 of 1858, the government of the parish was modified, so that it was confided to two Police Juries, one of the right bank, and one of the left bank, and to the town of Carrollton.

It is needless to discuss the mode by which the interests of the former corporations in the common property were distributed between these new ones ; because it was admitted on both sides that the interest in the property here concerned, which accrued to the Police Jury of the right bank, plaintiff herein, was three hundred and thirty-five thousandths (335-1000) of the whole.

The property so expressly bought, and the buildings so erected for public use, have been used for the public purposes so intended to the present day, and have never been used for any other purposes.

It cannot be doubted that by such purchase and use they became public things, *hors de commerce*, and not liable to seizure.

Police Jury vs. Michel, 4 An. 84.

In 1874, by Act No. 71 of that year, the legislature transferred the town of Carrollton, within whose limits this property was situated, to the city of New Orleans ; but the town still constituted part of the Second Judicial District.

By Act No. 45 of 1876, both the Sixth and Seventh Districts of the city of New Orleans (the latter being the former town of Carrollton), were made part of the Second Judicial District, and the Court was expressly directed to be holden in the very courthouse here concerned, and has been holden there to the present day, under this legislative direction.

In December, 1877, under certain judgments against the parish of Jefferson, right bank, the latter's interest was seized, and subsequently sold and adjudicated to Thos. McCormack, the present defendant, who has since held and controlled the same as owner.

This action is brought by the Police Jury to annul the sale and recover the property and its revenues.

The defendants contend that by the transfer of Carrollton to the city of New Orleans, the interest of plaintiff in this property, having passed outside the limits of the parish of Jefferson, ceased to be public, and became the private property of the parish, and subject to execution.

Parish organizations in this State, like counties in other States of the Union, are so feebly endowed with corporate life that they are regarded rather as *quasi* corporations, deriving such powers as they possess, not from special charters, but under general laws, and existing merely as involuntary agencies of the sovereign power of the State to exercise certain functions of local government, and to perform such duties as may be imposed upon them by the sovereign. Their powers are strictly limited, and are only "co-extensive with the duties imposed upon them by statute or usage."

Cooley on Const. Lim. pp. 240, *et seq.*

Dillon on Mun. Corp. § 10.

They are incapable of acquiring or holding immovable property, except for public purposes, under legislative authority, express or distinctly implied. Such property, once acquired and devoted to public use, cannot be alienated without legislative authority.

Dillon, § 512.

The extent of the legislative control over the public property of such corporations has been the subject of conflicting decisions ; but it is well settled that the legislature has power to alter or abolish the corporations, to change their territorial boundaries, to divide and transfer part of one parish to another, and in such case to regulate and direct the disposition of the property held by them for public purposes.

Dillon, §§ 37, 127, 128. Cooley, p. 235.

The legislature may apportion the property which had been common, either at the time of making the division, or at a subsequent period.

Dillon, § 129.

As long as the legislative power of apportionment has not been exercised, it seems that each division will hold and have the right to use the public property which falls within its limits. Dillon *ubi cit. supra.* We find no authority any where for the doctrine that public property can be converted into private property under any circumstances, as the effect of such territorial division or transfer.

Nor do we find any authority recognizing the right of such a corporation to alienate, or divert from public use, such property, without legislative permission.

The attempt to imply such legislative sanction in this case is entirely negatived by the provision in the Act No. 45 of 1876, expressly directing the public use, for which this property was acquired, to be continued.

We therefore conclude that at the time when this property was seized and sold it remained what it ever had been, public property, *extra commercium,* and not subject to execution.

The estoppels pleaded by defendants herein have no application to such a case as this. The acts of the former Police Jury referred to were entirely *ultra vires,* and had no more effect to estop the corporation than if they had been performed by entire strangers.

What may be the rights of the plaintiff to control or exercise ownership over this property, in the existing state of the legislative action, it is not necessary to determine here. The legal title rests in plaintiff, and gives it an equitable right to claim from the legislative power some equitable settlement of its interest. This is sufficient to maintain plaintiff's right to bring this action.

The appellee asks to have the judgment amended by allowing the sum of eight hundred dollars as revenues. For the reasons given by the District Judge, we think McCormack was a possessor in bad faith ; but we also agree with him that the evidence in the record is not sufficient to authorize any money judgment on this account in the present action.

For these reasons it is ordered, adjudged, and decreed that the judgment appealed from be affirmed at appellant's costs.

Rehearing refused.