ST.
 

 PAUL, J.
 

 This is an action brought by two residents and taxpayers of Shreveport, to enjoin the city of Shreveport from
 
 buying,
 
 and the school board of Caddo parish from
 
 selling,
 
 a certain unimproved portion of ground, or site for a building, in said city, on the ground that the former is without authority
 
 to buy, and the
 
 latter without authority to sell, said
 
 particular
 
 building site or portion
 
 of ground; the
 
 said city and school board being about to consummate a purchase and sale of said property for an agreed price of $24,000.
 

 There was judgment below enjoining the city from buying, but rejecting plaintiff’s demand for an injunction restraining the school board from selling; and plaintiffs and the city both appeal.
 

 I.
 

 The facts of the case are substantially these:
 

 1. The school board purchased the property with funds dedicated to the purchase of sites for school buildihgs. It bought the property (as we understand it) in anticipation of its being needed for school purposes, but ■ did not build thereon; and it now finds that the site is not needed or suitable for said purposes, and hence desires to sell.
 

 • 2. The citizens of Shreveport voted some two years ago a special tax for the purpose of constructing permanent public improvements in said city,
 
 including
 
 viaducts, storm sewers, and drainage, opening streets, paving streets fronting public property, erecting additional fire stations, purchasing necessary real estate, and construction of such other permanent public improvements as may be considered necessary and authorized by the city council; provided, however, that “no part of the same shall be used for any expenses of the city government.”
 

 The city council thought that a public
 
 auditwium
 
 for the use' of the citizens of Shreveport would be a desirable public improvement for said city, and that the erection of such a building would meet with the approval of the people.
 

 The funds derived from the special tax aforesaid would not, however, suffice for both the purchase of a site and the erection of such a building; but the council thought that, if an available site was secured, the people would authorize a further tax for the purpose of constructing the building.
 

 Accordingly, the council proposed and authorized the purchase of the particular site herein involved, which they thought available for the purpose in mind, and which the school board desired to sell. If the people voted the additional tax, the auditorium would be built on the site thus purchased; if the people refused to vote the additional tax, then the site would be used for some other permanent public improvement, or sold again and the proceeds invested elsewhere, as circumstances might dictate; but with no purpose to use at any time any part thereof for the expenses of the city government.
 

 That is the whole story, briefly told.
 

 
 *365
 
 II.
 

 It is plain from a reading of the declared purpose for which the special tax was voted, with the express authority to use the same for the “construction of such
 
 other
 
 permanent public improvements as may be considered necessary and authorized by the city council,” and with no other limitation than that no part’of the same shall be used for any expenses of the city government, that a very large
 
 discretion
 
 was vested in the city council as to what permanent public improvements might be necessary and desirable, and that the mention of certain public improvements therein was merely general, advisory, and suggestive rather than mandatory. Had the people intended that the special tax should be used only for the public improvements named and those
 
 of a similar nature,
 
 it would have been easy to express themselves clearly on that subject, by merely adding, after those named, the words
 
 “and the Mice,”
 
 or words to that effect, instead of adding, as they did, “and (the) construction of such
 
 other
 
 permanent public improvements as may be considered necessary and (be) authorized by the city council.”
 

 And, since the taxpayers have voted to vest that discretion in their own city council, and not in the court of Caddo parish or in this court, it follows that it would be a purely gratuitous and unwarranted assumption of authority on the part of either to interfere with the council in the exercise of that authority, unless
 
 mamfestly
 
 abused.
 

 We see no abuse of discretion, manifest or otherwise, on the part of the city council, in what it proposes to do. The members of the council are presumably in touch and in accord with their constituents, and acquainted with needs of the community in which they reside, and with whose local government they have been intrusted by vote of the people, to whom they are responsible for their stewardship.
 

 Manifestly, therefore, if the funds derived from the special tax had sufficed, both for acquiring a site for an auditorium and for constructing the building itself, there could be no possible ground for the interposition of any court, and the substitution of its authority and power for the discretion of the body legally charged with the expenditure of the fund to the best advantage of those who have raised it and intrusted it to that body for that purpose.
 

 And let us bear in mind that we are not here dealing with the general powers of municipal corporations, and its authority to do this or that with the funds raised by general taxation for the ordinary purposes of government. We are dealing with the case of a body specially intrusted with the expenditure of a particular fund, not belonging to the municipality, but only held by it in trust for certain uses according to the sound discretion of a certain body; and the fact that such body is a city council is merely a coincidence, and serves only to cloud the issue.
 

 Nor do we see wherein there is any abuse of that same discretion, gross or otherwise, because the city council has sought first to obtain an available site for an auditorium, before asking the people to tax themselves for the construction of such building. The site now available may not be available later on, and it may be that to secure such a site at some future time may cost many times the price for which this site may be purchased now. At any rate, the city council is acting according to its own best judgment in the matter, and this court is without right to substitute its judgment for that of the council.
 

 We have no doubt as to the right of the city council to make this purchase.
 

 The cases cited by plaintiffs have no application whatever to the case at bar, to wit, Sugar v. Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 723; Cruse v. Police Jury, 151 La. 1056, 92 So. 679; O’Beirne v. Police Jury,
 
 *367
 
 151 La. 1088, 92 S. 709; Id., 154 La. 329, 97 So. 461; and Young v. Bossier City, 154 La. 625, 98 So. 45. In all of those there was presented a case where a fund (or property) had been dedicated to some one particular purpose, without any discretion whatever in the trustee thereof to use saíne for any other, and of course this court held that the trustee must use it for that special-purpose only. But here we have a case where there
 
 has
 
 been discretion vested in the trustee, and hence of course we will not interfere unless that discretion be abused, which it has not in this instance.
 

 III.
 

 We also think the school board has undoubtedly the right to sell land, which it originally purchased for school purposes, but for which it has no longer any need for said purposes and which is unsuitable therefor.
 

 Manifestly the school board has no right to acquire lands for any other than school purposes, and, since it has no right to
 
 acquire
 
 lands for any other than school purposes, it follows that it cannot
 
 hold
 
 lands indefinitely for other than school purposes; and hence it is the
 
 plain duty
 
 of the school board to divest itself of any land which admittedly, according to the judgment of the board itself, is unnecessary or unsuitable for school purposes; and mandamus would certainly lie to compel the board to divest itself of land so held.
 

 “The object of this order [mandamus] is to prevent a denial of justice, or the consequence of defective police, and it should therefoi’e be issued
 
 in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, OR AN ABUSE OF AJNY NATURE
 
 WHATEVER.” Code of Practice, art. 830. (Italics and capitals ours.)
 

 Hence it has been held that
 
 mmdamus
 
 was the proper remedy to compel a parish treasurer to pay over to a school board money collected for school purposes and illegally versed into the parish treasury, notwithstanding that it was “in a general sense” correct, that the parish treasurer could pay no money out of the parish treasury except in compliance with the resolutions and warrants of the police jury of said parish. State ex rel. Leche v. Geier, 35 La. Ann. 1148.
 

 Here, then, a parish treasurer was directed by mandamus to pay out funds which had gone into the parish treasury (and had apparently already been appropriated and paid out, in part, for other purposes), although
 
 technically
 
 the law forbade him to make any such payment, for—
 

 “no money shall be paid out of any parish treasury to any person, unless the same shall have been previously allowed by the police jury, or some court or officer lawfully authorized to make such allowance.” Rev. Stat. 1870, § 2643.
 

 But “justice and reason” required that the
 
 abuse
 
 be corrected; and mandamus was held to be the proper remedy for that purpose.
 

 And since a mandamus will not issue to compel a public board or officer to do that which the law does not authorize him to do (State ex rel. Tebault v. Michel, 122 La. 188, 47 So. 460), it follows that a public board or officer
 
 must
 
 be authorized to do
 
 voluntarily
 
 that which it could by mandamus be compelled to do, even without being
 
 specially
 
 authorized to do so. Cf. State v. Geier, supra.
 

 But we think the school board is, as in this case,
 
 specially
 
 authorized by law to sell property which it has acquired for school purposes but which (in its judgment) is no longer necessary or suitable for siich purposes. ,
 

 Act 100 of 1922, § 20, pp. 210, 211, provides that:
 

 “The parish school board shall determine the number of schools to be opened, the location of the schoolhouses, * * * [and] may change the location of a schoolhouse,
 
 sell or dispose of the old site,
 
 and use the proceeds thereof toward procuring a new one. - * * * ”
 

 This vests the school board with “absolute discretion” in such matters; and “for the exercise of this discretion, a discretionary
 
 *369
 
 control of the school funds is
 
 absolutely necessary.”
 
 State ex rel. Martin v. Webster Parish School Board, 126 Da. 392, 52 So. 553.
 

 And when it is permitted that property dedicated to some special purpose he sold, but required that the proceeds thereof be, in that event, used to purchase other property to be used for the same purpose, “the fact that the old property was not sold simultaneously with the purchase of the new property (or vice versa) does not alter the legal situation,” or invalidate the sale of the old property for the purpose of purchasing the new or paying the price thereof. Society of the Holy Family v. Charbonnet, 154 Da. 894, 98 So. 410.
 

 For the rest, to get at the true meaning of a law it often suffices, “simply to read the statute intelligently” (McElveen v. Goings, 116 La. 977, 41 So. 229, 114 Am. St. Rep. 574), and give it that meaning which is “most consonant with reason” (Bermudez v. Union Bank, 7 La. Ann. 62).
 

 The authority conferred by the statute in the school. board, to “sell and dispose of the
 
 old site”
 
 of a schoolhouse clearly means
 
 any site
 
 which is no longer used, or necessary, or suitable for a school. The
 
 plain intent
 
 of the law was that the school board not only might, but
 
 should,
 
 sell any such site, and not find itself incumbered with lands no longer' useful for school purposes, since the board would have, in such cases, either to abandon the property or sell it. It certainly could not
 
 hold
 
 it as a permanent investment for the statute declares that its purpose is to provide “for the administration and supervision of the public schools of Louisiana”; and we may look through its provisions in vain for any authority given to the state board of education and parish school boards to
 
 invest
 
 any part of the school funds in lands or otherwise, or to use such funds for any other purpose than the maintenance and operation of the public schools under their jurisdiction.
 

 And it would certainly neither be reading the statute inteRigently, nor consonant with reason, to hold that a
 
 useless
 
 site can only become an
 
 old
 
 site by first erecting a schoolhouse thereon and then discontinuing the school established therein, say for the sole purpose of being able to sell the useless site itself, or, in other words, by wasting the money intended for the support of the public schools. Hence this is an interpretation which does
 
 not
 
 appeal to us, nor even very strongly, we surmise, to plaintiffs herein themselves.
 

 Parish of West Carroll v. Gaddis, 34 La. Ann. 928 (followed in Dupuy v. Police Jury, 116 La. 783, 41 So. 91), has no application here.
 

 In that case the police jury of the parish had sold an abandoned and dilapidated courthouse, and evidently intended to use the proceeds for the payment of the debts of the parish. The court held that the police jury was without power to make a valid sale of said courthouse site, in the absence of some express authority granted by the Legislature, saying;
 

 “Parishes, like counties in other states, are involuntary political or civil divisions of the state, designed to aid in the administration of government, as state auxiliaries or functionaries. * * * ” °
 

 “They
 
 do not acquire for themselves
 
 as a political organization. They
 
 acquire for the benefit of the public,
 
 of the people, particularly the local community, which is
 
 represented primarily by the state,
 
 and secondarily by them, but so far only as the state has delegated to them the power to do so. As state auxiliaries, they cannot dispose of
 
 public property,
 
 unless with the formal sanction of the state. * * * ” (Italics ours.)
 

 And the reason why a police jury cannot sell or otherwise dispose of a courthouse site, without express and special authority from the Legislature, is that:
 

 It was the duty of the parish to provide a courthouse and jail. Rev. Stat.. § 2476.
 

 
 *371
 
 The property so expressly bought, and the buildings so erected, became public things, hors de commerce. Police Jury v. McCormack, 32 La. Ann. 624.
 

 And since “public things are those,
 
 the property of which
 
 is vested in a whole nation (i. e. in
 
 the state), * *
 
 * ” it follows that public things cannot be alienated without the express consent of the sovereign, and hence, of that branch of the government to which has been given the supreme lawmaking power.
 

 In the case at bar we have shown, we think, that the legislative branch of the government has expressly consented to the sale by a school board of the “old sites” of schools, and that
 
 any site
 
 which is unused and unnecessary or unsuitable for school purposes is an
 
 old site,
 
 within the meaning of the statute.
 

 And hence our conclusion is that plaintiffs' demand for
 
 an
 
 injunction should have been rejected as to both defendants.
 

 Decree.
 

 The judgment appealed from is therefore amended so as to reject plaintiffs’ demand for an injunction as to both
 
 defendants;
 
 and. as thus amended, said judgment is affirmed at plaintiffs’ cost in both courts.