McBRIDE, Judge.
Relator, who is the owner of Lots Y and Z, fronting for a distance of 150 feet on S. Claiborne Avenue, in Square No. 336 of the Seventh Assessment District, City of New Orleans, seeks by mandamus to compel the Director of Safety and Permits for the City of New Orleans to issue to him a permit to erect on said property a gasoline filling station with appurtenant structures, which permit was refused relator on the ground that the buildings contemplated for use for the filling station pursuits would be violative of the Comprehensive Zoning Law of the City of New Orleans. The property in question, located in a B-Two-Family District as established by the Zoning Ordinance, has been used for commercial purposes for a long number of years and has acquired a lawful nonconforming use status under the ordinance; said property is unimproved except for a makeshift open building or shed located thereon as shown by a photograph in the record.
Plaintiff’s demand was met by an exception of no right or cause of action which was maintained, and relator has appealed from the judgment dismissing his suit.
The sole question the case presents is whether the relator has the right to erect upon the land in question the buildings and improvements necessary for the operation of the contemplated filling station business; or, in other words, has the relator the right to enlarge a nonconforming usage of vacant property by erecting thereon structures to be put to commercial use?
Under the Home Rule Charter of the City of New Orleans, which became effective May 1, 1954, the Department of Safety and Permits is charged with the administration and enforcement of the zoning and building code ordinances and all laws, ordinances, and regulations under which permits are required. Said department is also charged with receiving all applications for permits and determining whether the applicant is entitled thereto according to the laws, ordinances and regulations under which the permit is required.
It is not disputed that prior to and at all times since January 1, 1929, relator’s above-described property was and has been utilized for commercial purposes, and there is no issue raised that said property has not been recognized as having a nonconforming use status by all subsequently adopted zoning ordinances of the Commission Council of New Orleans.
By Act 240 of 1926, as amended by Act 471 of 1948 (carried over into the Revised Statutes of 1950 as LSA-R.S. 33: 4722), the Legislature authorized the governing authority of municipalities to pass zoning ordinances in order to regulate and restrict the erection, construction, alteration, or use of buildings, structures or land,
“* * * Provided that no regulations shall be enacted that will affect the status of non-conforming usage *370 has been for commercial purpose wherein said usage of ground constant and consistent from January 1st, 1929, and that said usage has not ceased for a period of six (6) consecutive calendar months.”
It is most earnestly contended on behalf of the relator that in view of the above-quoted language of the 1948 legislative enactment, coupled with the fact that the property in question has been constantly and consistently utilized since January 1, 1929, for commercial purposes, the authorities of the City of New Orleans possess no right or power to make any kind of regulations concerning said property, and that if the prevailing Comprehensive Zoning Law of the City of New Orleans contains provisions in any way “affecting” the nonconforming use status which relator’s property enjoys, then said zoning law is ultra vires, null and void. What counsel is really contending is that the City of New Orleans, under the terms of the 1948 act, can make no provisions which tend to prevent a full and unhampered use and enjoyment of the property by relator, including provisions which would prevent relator from enlarging or broadening the nonconforming commercial uses to which the property has been put in the past or denying him the right to erect new buildings on the land.
We do not agree with counsel, and to answer their contention we state that the quoted language of the 1948 act does not inhibit the City of New Orleans from making zoning regulations concerning property occupying a nonconforming use status, but the language only means that the zoning authorities of the municipality could not “affect” the status of the nonconforming uses such as by abolishing such usage or denying to the owner the right to continue in the use of the property for the nonconforming purpose, etc. We said this very plainly in City of New Orleans v. Langenstein, 91 So.2d 114, 119:
"All that the Legislature meant by Act 471 of 1948, which amended Act 240 of 1926, was that the use of an existing building as of January 1, 1929, was not. to be disturbed by the provisions of any subsequently adopted municipal or local ordinance.”
We see nothing in the act of 1948 which could be construed as even intimating that the City of New Orleans cannot adopt zoning regulations designed to preserve the status quo of nonconforming property by prohibiting a broadened or expanded future use thereof either by encroachment upon any other portion of the premises or by the erection of new buildings thereon or by enlarging or structurally altering existing buildings.
The present “Comprehensive Zoning Ordinance,” which bears No. 18,565, C.C. S., adopted in July of 1953, amends and re-enacts the original Comprehensive Zoning Law, Ordinance No. 11,302, C.C.S., and relator’s rights relative to the use of his property must be determined from the provisions thereof:
Article V, Section 1, paragraph 1,-of the ordinance in part provides as follows:
“No building or land shall hereafter be used, and no building or part thereof shall be erected, reconstructed, converted, moved, or structurally altered unless in conformity with the regulations as set forth in this ordinance; * * ” (Italics ours.)
The ordinance defines “Non-conforming Use” in Article III thus:
“A building or land which does not conform with the height, area, or use regulations of the district in which it is located.”
In Article XXIV the following provisions are made with reference to nonconforming uses:
“A non-conforming use of a building or portion thereof or land, which *371 use existed lawfully at the time of adoption of this Ordinance and which use remains non-conforming under this Ordinance, * * * may be continued or changed subject to the following regulations(Italics ours.)
It is therefore abundantly clear that under the terms of the ordinance the nonconforming usage status of the property “remains” and “may be continued,” or such use may be changed but “subject to the following regulations.”
The regulations which provide when and under what circumstances changes in the nonconforming use may be made are set forth in Article XXIV as follows:
“1. Any building legally under construction which will become non-conforming at the time this Ordinance or an amendment thereto becomes effective may be established as a bona fide non-conforming use by the Board of Zoning Adjustments if the Board finds that such construction represents a substantial investment.
“2. No building or portion thereof or land used in whole or in part for non-conforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any non-conforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended non-conforming use shall be taken into consideration in interpreting and construing the word ‘vacant’ as used in this Ordinance; provided further that if the lessee of any building or place used or occupied for non-conforming purposes under a bona fide lease shall at any time before the expiration of said lease cease to occupy or use said building for non-conforming purposes, said building or land shall not be considered vacant until the owner of said building or place shall again obtain legal control of its occupancy and use; but this exemption shall not apply if the lessor for any reason be entitled legally to regain possession and does not by legal or other effective means attempt so to do; and provided further that in the event of bankruptcy a building or place used for non-conforming purposes shall not be considered vacant until said building or place is sold or possession thereof returned to the owner by order of court or otherwise in the bankruptcy proceedings; and provided, further, that any building or land used for non-conforming commercial or industrial purposes upon which a mortgage has been inscribed and recorded prior to the adoption of this Ordinance shall not be considered vacant after foreclosure proceedings have been instituted until mortgagee (the holder of the mortgage) or purchaser at foreclosure sale takes possession and ownership established by court procedure or until mortgagee gains possession of the property by a recorded legal transfer.
“3. A non-conforming use of a building or a portion thereof, or of land or a portion thereof, shall not be extended or enlarged by the attachment of signs to the building, by the placement of signs or display materials on land outside of the bulding, or by the attachment of racks, balconies, or other projections from the building or in any other manner, except when required by law or ordinance, provided, however, that buildings which are used for neither commercial nor industrial purposes and are non-conforming only as to height, yard areas, or lot area per family may be structurally altered and their cubical content increased if such alteration or increase in cubical con *372 tent does not further encroach upon any required yard space or off-street parking area.
"4. A structure erected, converted, or structurally altered in violation of the provisions of the Ordinance which this Ordinance amends shall not be validated by the adoption of this Ordinance unless the zoning classification of the land upon which the zoning violation exists is changed to a classification wherein the uses permitted and the regulations of the district automatically eliminates the violation status of the use in question as of the effective date of adoption, provided, however, that all suits at law or in equity and/or all prosecutions resulting from the violation of any zoning ordinance heretofore in effect, which are now pending in any of the Courts of this State, or of the United States, shall not be abated or abandoned by reason of the adoption of this Ordinance but shall be prosecuted to their finality the same as if this Ordinance had not been adopted ; and any and all violations of existing zoning ordinances, prosecutions for which have not yet been instituted, may be hereafter filed and prosecuted; and nothing in this Ordinance shall be so construed as to abandon, abate, or dismiss any litigation or prosecution now pending and/or which may have heretofore been instituted or prosecuted.
“5. If no structural alterations are made, a non-conforming use of a building may be changed to another nonconforming use of the same or more restricted classification. Whenever a non-conforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use.”
Nowhere in the provisions regulating changes in a nonconforming usage does it appear that relator is granted any right to make such change as he contemplates on his property. While it clearly appears he may maintain and continue the present nonconforming status of his property, the ordinance does not authorize his erecting any buildings thereon and it must be held that he is not entitled to a permit from the Director of Safety and Permits for the erection of the proposed buildings and improvements necessary in the operation of the new business venture.
In City of New Orleans v. Langenstein, 111 So.2d 363, 369, we were concerned with the interpretation of Ordinance 11,302, C.C.S., before its amendment and re-enactment, and particularly Sections 10(a) and 10(b) thereof with reference to nonconforming usage of property, which, in some respects, are similar in intendment to the provisions contained in the prevailing ordinance. In the Langenstein case we squarely passed on the question whether it was permissible for the property owners to erect buildings on nonconforming vacant property, saying:
“* * * We must answer in the negative. Whatever right they may have had to use the land for nonconforming purposes did not have such force as to authorize the erection of buildings thereon for nonconforming uses.”
Under the City’s charter the Department of Safety and Permits, which is headed by the defendant as Director thereof, in addition to being charged with receiving all applications for and issuing permits, is also charged with the administration and enforcement of the zoning and building code ordinances, and all laws, ordinances and regulations under which permits are required. Under his duties as outlined in the charter, the defendant could not legally issue the permit sought by relator for the simple reason that such improvements as relator desires to construct would be in violation of the zoning laws which it is the defendant’s duty to admin *373 ister and enforce. While it is true a mandamus will lie against a public officer to coerce the performance of a ministerial duty, such writ will not issue to a public board or officer to do that which the law does not authorize him to do. Henderson v. City of Shreveport, 160 La. 360, 107 So. 139.
For the above reasons, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., takes no part.