GLADNEY, Judge.
Plaintiff, tax payers, were granted a permanent injunction restraining the Oua-chita Parish School Board from constructing an office for its use. For that purpose the board had appropriated $171,600.00 which sum was received by it from the State Department of Highways as dam *361 ages assessed in legal proceedings for the expropriation of the buildings and site comprising Ouachita Parish Junior High and Elementary School. In reaching its decision, the trial court held that the' use of such money for the purpose stated was contrary to LSA-R.S. 17:81 (Acts of 1922, No. 100, § 20).
Article XII of the LSA-Constitution of 1921 sets forth the basic tenets for public education for elementary and secondary grades of this state, together with provisions securing and safeguarding certain revenues in support thereof. Pursuant to the Constitution, the Legislature through Act 100 of 1922 (LSA-R.S. 17:1 et seq.) created the state public school system and provided for parish school boards as local governing bodies, which bodies were to function as agencies of the state and as political bodies with certain powers. It is recognized by our jurisprudence that school boards possess only delegated powers defined by statutes and constitutional limitations, and are not free to go beyond the specified powers delegated to them. Ellis v. Acadia Parish School Board, 211 La. 29, 29 So.2d 461 (1946); Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959).
The general powers of the parish school board are enumerated in LSA-R.S. 17:81, which, inter alia, provides:
“ * * * Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education, as it may deem proper.”
2|i H5 ^ ^ i}c
“Each school board shall exercise proper vigilance in securing for the schools of the parish all funds destined for the support of the schools, including the state funds apportioned thereto, and all other funds. * * * ”
* 5}c * * *
“Parish school boards may receive land by purchase or donation for the purpose of erecting school houses; provide for and secure the erection of same, construct such outbuildings and enclosures as shall be conducive to the protection of property, and make repairs and provide for the necessary furniture, equipment and apparatus. * * $ »
% * * *
“They have the power to recover for any damage that may he done to the property in their charge; they may change the location of a school house, sell or dispose of the old site, or of any site zvhich for any reason can no longer be used or which is unused and unnecessary or or zmsuitable as sttch, and use the proceeds thereof for procuring a new one. * * * ” (Emphasis supplied.)
It is a matter of general recognition by the courts that school funds are not only impressed with a general educational trust, but in many cases they are impressed with a special trust limiting their use to special educational spheres, and in such cases, of course, they can be used for no. other. 47 American Jurisprudence p. 363, verbo “Schools”. As to what particular expenditures of school funds may be made depends largely upon the construction of statutes specifying the use of such funds. Thus, Article XII, § 15, Second, of the Louisiana Constitution of 1921, prescribes in part:
“Parish school boards shall place into one fund, to be known as the general parish school fund, all revenue received for the general maintenance of public schools from state and parish constitutional and statutory sources; and such funds shall not be subdivided, apportioned or separated in any manner whatsoever, nor shall they be paid to any ward, district, or other subdivision, but such revenue shall be dedicated and used exclusively, to pay the cost of the current operation of public elementary and secondary *362 schools within the parish and under the control of the parish school board, as provided for by the laws of the State.
“Provided, that funds received from special taxes or the sale of bonds for the construction or repair of school buildings, the purchases of sites and of school equipment, shall not be placed in the general parish school fund but shall be kept separate and apart therefrom; and shall be used exclusively for the purposes for which they are intended, as provided for by. the laws of the State.”
From the stipulated facts we are informed that the present site of the Oua-chita Parish School Board office on St. John Street in the City of Monroe was acquired prior to the year 1944 and was paid for from the general fund of the school board and is presently occupied by the Superintendent of Schools and his staff; that no parishwide bond issue was held in Ouachita Parish for any purpose prior to the year 1950, all schools, property, etfc. having been acquired and built by the general tax and general fund of the school board; and that a tax election on November 7, 1961, was held in School District No. 1, which includes -all of Oua-chita Parish except the City of Monroe, and approved by popular vote on the proposition of issuing seven million dollars in bonds for the purpose of acquiring lands for building sites and play grounds, and for purchasing, erecting, enlarging and improving school buildings and acquiring the necessary equipment, and furnishings therefor. It is also shown that on January 12, 1963, prior to the institution of this suit, the sum of $31,500.00 was paid out of the said $171,600.00 and used by the school board in purchasing a site to be used for the construction of-a new parish school board office.
The parties stipulated all relevant facts but forasmuch as the issue herein presented is concerned with the validity of the use of certain funds, we have emphasized only some of the stated facts. We are confronted with two factual questions: First, was the revenue initially used in acquiring the site for and construction of the aforementioned school impressed with a special trust limiting its use to that purpose? and second, was such revenue, if not originally dedicated, made so by the above underscored provisions of LSA-R.S. 17:81 ? It is conceded that the source of the revenue or money used in acquiring the old site was the general fund, and this is true with respect to the present school board office. Thus, no portion of the $171,600.00 was originally dedicated to a special use.
The single issue before us, therefore, is whether the $171,600.00 is restricted as to use by virtue of the provisions of LSA-R.S. 17:81. The trial judge’s conclusion was influenced by an expression in Henderson v. City of Shreveport, 160 La. 360, 107 So. 139 (1926) to the effect that funds derived from old school buildings must be reinvested in school buildings. Henderson v. City of Shreveport called upon the court to decide only whether the Caddo Parish School Board had .authority to sell and dispose of a school site purchased with funds dedicated to the purchase of sites for school buildings. With reference to paragraph 20 of Act 100 of 1922, above quoted, the court held the school board was expressly authorized by law to sell property which it had acquired but which (in its judgment)' was no longer necessary or suitable for such purposes. After quoting the effective part of the statute, it commented:
“This vests the school board with ‘absolute discretion’ in such matters; and ‘for the exercise of this discretion, a discretionary control, of the school funds is absolutely necessary.’ State ex rel. Martin v. Webster Parish School Board, 126 La. 392, 52 So. 553.” [107 So. 139, 142]
That decision further observed that when it is permitted that property dedicated to *363 some special purpose be sold it is required that the proceeds thereof be used to purchase other property to be used for that purpose. It is of no moment herein whether or not this remark of the court was of a gratuitous nature, for the use of the proceeds of the sale was not an issue in Henderson v. City of Shreveport. We approve as to its correctness only in that the funds in question were dedicated.
In his reasons for judgment the judge a quo said:
“If it is contended that the permissive auxilliary verb ‘may’ should be applied to the phrase ‘ * * * and use the proceeds thereof for procuring a new one * * * ’, then what purpose or meaning does the phrase have. It cannot be seriously contended that the school board did not already have this authority. If this phrase is meant to be permissive, it is only redundant for without the phrase the school board had the authority to use funds derived from old school buildings for new school buildings. The courts must assume that the legislature had purpose and intent in adding this phrase. It can only be given meaning, intent and purpose if it is mandatory and if it is a limitation of power. In the permissive form it adds nothing to this section of law and has no meaning, for the school board already had authority to use this money for the purposes of new school sites. It must be read as a limitation of the school board’s authority and a dedication of these monies for a specific purpose in order to have meaning. (Note: No such limitation or dedication is attempted in the first clause of this paragraph relative to the funds recovered by reason of damage.) Therefore, it is the holding of this court that ‘may’ does not apply to the phrase ‘ * * * use the proceeds thereof for procuring a new one * * * ’ and, therefore, it is mandatory and not permissive that the proceeds from an old site, which is disposed of or sold, must be used for procuring a new one.”
We have carefully studied the scholarly and forceful remarks of the trial judge, which are entitled to the greatest respect. We deem it more important, however, because of the potential effect of our decision to ground it upon the intent and purpose of the Legislature rather than to-resolve it largely upon semantics. We think it is manifest that the primary, if not the sole, object and purpose of the above underscored paragraph under discussion was-to expressly authorize school boards to sell or dispose of school sites no longer needed. It plainly accomplished this purpose. As so written a vendee of a school board can not effectively question the delegation of this power or grant. Further, it is our considered opinion that the clause “ * * * use the proceeds thereof for procuring a new one * * * ” was written without consideration for any specific purpose and was written to be directory and not compulsory. If construed as words of dedication restricting the use of proceeds which properly belonged to the general fund, statewide application of such restricting language would be limited. We agree with the proposition that if the phrase in question should be construed as permissive, it would be without substantial meaning, for the power is presently vested in the school board to draw upon the general fund for procuring school sites. Of course, it may' also use any funds dedicated for such a purpose. Interpreted as being permissive or directory the statute would simply leave the school board with discretion to use its general fund to meet other, and perhaps more pressing school needs.
We venture to say it is the general practice now, and was at the time the statute was written, to purchase school sites and erect school buildings through the use of special taxes or other dedicated revenues. The financing of the Ouachita Junior High and Elementary School from the general fund of the Ouachita Parish School Board was exceptional and this method was uncommon in other parts of the state. The desirability of safeguarding general school funds is evidenced by the provisions of Article XU, § 15, Second, of *364 the Louisiana Constitution, above quoted, and we do not think it will he seriously contended it is more important to our educational system to have school buildings than to have administration and instruction. Both are essential. In the absence of more indicative verbiage it is our opinion that the Legislature did not have in mind a restriction upon the income of the general fund. For these reasons we hold that the trial court was in error in its construction of the statutory provisions.
Counsel for appellees further urges the present office of the Superintendent of Schools is adequate and that additional funds are needed to augment the school construction program which could be alleviated by use of the $171,600.00. The action of the school board in using that money to construct an office is said to constitute an abuse of discretion which the court should correct. The argument is without merit. We must presume the school board is acting according to its own best judgment, and it would be a purely unwarranted assumption on our part to interfere with the exercise of its authority, unless manifestly abused. We find no evidence thereof and hence, we are without right to substitute our judgment for that of the school board in such matters. Henderson v. City of Shreveport, supra.
Both parties to this proceeding have asked the courts to grant relief under the Declaratory Judgment Act. It follows from the finding of this court as above set out, that there should be judgment favorable to defendant-appellant, Ouachita Parish School Board, reversing the judgment appealed and recasting it to read:
It is, therefore, ordered, adjudged and decreed:
That there be judgment in favor of defendant and against plaintiffs, dismissing plaintiffs’ demands and dissolving the injunction heretofore issued.
It is further ordered that a declaratory judgment is rendered herein that the Ouachita Parish School Board has the power and authority to use all or any portion of the fund of One Hundred Seventy-One Thousand Six Hundred ($171,600.00) Dollars received by it in the expropriation of the site of the Ouachita Parish Junior High and Elementary School to purchase a site for and the construction of a school board office building.
It is further ordered that plaintiffs pay all costs of this suit.