PRICE, Judge.
In this class action brought by plaintiff on behalf of all teachers in the elementary and secondary schools of the Monroe City School system, a declaratory judgment is sought to determine the legality of the payment of the employer’s contribution to the Louisiana Teachers’ Retirement System from the proceeds of sales tax revenues authorized by a special election to provide funds to supplement teacher salaries. Plaintiff also seeks a writ of permanent injunction and a writ of mandamus to prohibit the alleged illegal use of these funds and reasonable attorney’s fees under La. C.C.P. Art. 595.
Defendants are the Monroe City School Board, the individual members of the Board and the Superintendent of the City School system.
From a judgment of the trial court granting plaintiffs the relief prayed for, defendants have perfected this appeal.
In his written reasons for judgment the trial judge has set forth the events giving rise to the litigation, the issues presented and their resolution, very concisely and in a manner that cannot be improved on. As we are impressed with the views expressed therein, we consider it appropriate to quote from his reasons as follows:
“On Monday, April 8, 1968, acting pursuant to the power granted it under R.S. 33:2737 to levy and collect a sales and use tax, the Monroe City School Board (acting in conjunction with the Ouachita Parish School Board) ordered and called a special election to be held on May 25, 1968, in the Parish of Ouachita (which includes the City of Monroe) on the proposition of whether to authorize the levy and collection of one-half of one per cent sales and use tax therein with the tax revenues from said sales and use tax levy to be used exclusively for specific and designated purposes as set forth hereinbelow.
*600 “Pursuant to the call, the election was held with a majority voting in favor of the proposition.
“Thereafter, the Board on September 3, 1968, formally adopted an ordinance levying the sales and use tax and the tax has been in continued force and effect since that time.
“Prior to, at the time of and for a year subsequent to said levy the employer’s contribution to the Teacher’s Retirement System of Louisiana (imposed on the Board by R.S. 17:303 [17:703] and related provisions of law) based upon ‘total annual compensation or salary of all teachers’ in the employ of the Board, was paid by the comptroller of the State of Louisiana (under R.S. 17:703(5) issuing his warrant for the payment of same directly to the Treasurer of the State of Louisiana, with the State Treasurer, in turn, paying the moneys for each employer’s contribution directly to the Board of Trustees of the Teachers’ Retirement System.
“The employer’s contribution thus paid directly by the State Treasurer to the Teachers’ Retirement System constituted employer’s contribution due on the total annual compensation of the teachers, including not only that portion of the teacher’s total salary provided by State law in accordance with the minimum teacher’s salary schedule, but also including payment of said employer’s contribution on the salary increase provided by the Board from sales tax revenue.
“The 1969 legislature by Act No. 158 (R.S. 17:703.1), approved by the governor on June 20, 1969, however, imposed directly upon each local school board, including Monroe, the obligation to pay the employer’s contribution (o the Teacher’s Retirement System insofar as such employer’s contribution related to compensation which was in excess of the minimum salaries established by law in the statewide minimum teachers’ salary schedule.
“Thus, by this legislative enactment, the Monroe City School Board was for the first time required to pay a part of the employer’s contribution to the Teachers’ Retirement System.
“Pursuant to this new law, the Board had to commence paying the employer’s contribution on that portion of the total salaries above said minimum, being that salary portion stemming from sales tax revenues, and that portion of the salaries known as ‘cost of living’ which stemmed from funds provided from the general operating budget of the Board and in no wise derived from the sales tax.
“Beginning with the fiscal year 1969— 1970 (July 1, 1969) the Board commenced using sales tax revenues for the purpose of paying to the Teachers’ Retirement System the employer’s contribution owed on the special monthly salary supplements stemming from sales tax revenues and said practice continues and exists today as the established fiscal policy of the Board.
“For the fiscal year 1971-72, an employer contribution of 8% of total salary has been established by the Board of Trustees of the Teachers’ Retirement System and by the State Superintendent in accordance with R.S. 17:703(1), (2) and (3).
“The plaintiff contends that if the Board carries out and effectuates its established policy to pay from sales tax proceeds that portion of the employer’s contribution due on the teacher’s supplemental salary from sales tax revenues, substantial sums of moneys will be withdrawn by the Board from sales tax proceeds, thereby reducing the moneys available to pay salary increments to the teachers employed by the Board.
“The enabling legislation and statutory authority under which the sales tax was imposed is R.S. 33:2737, which specially provides:
“ ‘D. The proceeds of the tax herein authorized shall he used exclusively to supplement other revenues available to the school board for the payment of salaries of teachers in the elementary and *601 secondary schools of the parish or city, as the case may be, and/or for the expenses of operating said schools, and the ordinance imposing said tax and any amendments thereto shall state such purpose. None of the proceeds of this tax shall be used for capital improvements.’ (Emphasis supplied)
“Pursuant thereto the proposition submitted to the voters for their approval stated, in part:
“ ‘Eighty-eight per cent (88%) of the revenues received by each School Board is to he used for the payment of salaries of teachers, as defined by the State Department of Education, in the elementary and secondary schools of said City and Parish and is to be divided equally among said teachers in each school system; and
“ ‘Twelve per cent (12%) of the revenues received by each School Board is to be used for the payment of salaries of personnel, other than said teachers and school board central office administration and supervisory personnel, employed by the respective School Boards.’ (Emphasis added)
“Following a favorable vote an ordinance levying the tax was enacted, which ordinance provided in part:
“ ‘Section 13.03. In compliance with the said special election of May 25, 1968, authorizing said tax, after all of the costs and expenses of collection and administration of the tax, including legal costs, have been paid as provided for in Section 13:02, the remaining funds shall be allocated and distributed monthly to the City School Board of the City of Monroe and Parish School Board of the Parish of Ouachita, on the basis of the average daily membership for the preceding school year, to he iised solely for the purposes designated in the proposition authorizing the levy of the tax.
“It is noted that under R.S. 33:2737 it was possible for the funds derived from the sales tax to be used not only for payment of school teachers, but also for the expenses of operating schools, but that the proposition submitted to and approved by the voters restricted the use of said funds Jor the payment of salaries of teachers’
“The jurisprudence of our state has long established that when a special tax is voted by the electorate and the revenues therefrom are declared to be used for a specific purpose, then neither the school board nor any other state or municipal agency may use those funds for any other purpose.
“In Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931), the Supreme Court of Louisiana said (p. 594) :
“ ‘The funds derived from special taxes do not become part of the general' fund of the board, but must be kept separate and used for the specific purpose intended.’
“See also Orleans Parish School Board v. City of New Orleans, 198 La. 483, 3 So. 2d 745 (1941).
“It is the Court’s opinion that the use of the sales tax proceeds to effect payment of the employer’s contribution to the Teachers’ Retirement System was not contemplated prior to or at the time of the election and the levy of the tax. It was not until more than a year after the sales tax election that R.S. 17:303 [17:703], was enacted into law thrusting upon the Board the obligation of paying the employer’s contribution on teachers’ salary supplement stemming from sales tax revenue and on any other part of the teachers’ total salary paid by the Board over and above the state minimum salary schedule.
“It is further the court’s opinion that the Legislature gave no thought to the availability of funds for payment of the employer’s contribution at the time of the passage of Act 29 of the Extra Session of 1964 (R.S. 33:2737). Later as more and more *602 parishes availed themselves of its provisions and began supplementing the salaries of their teachers through sales tax revenues, the Legislature realized that under the existing law the State was saddled with paying the additional employer’s contribution. Thus in 1969 it enacted the legislation mentioned above, in effect saying to the local Board and the teachers, ‘If you have levied or want to levy sales- taxes to pay supplemental salaries to your teachers, you are going to have to figure out a way to pay the employer’s contribution to the retirement system out of your funds. The State is no longer going to pay it.’ Those municipal and parish boards which had already instituted such a program (such as Monroe) were thereby caught in a dilemma not necessarily of their own choosing.
“The evidence before the Court consisting of a letter from Mr. W. B. Hack-ett, Secretary-Treasurer of the Louisiana Teachers’ Retirement System indicates that the employer’s contribution to the Retirement System remains in the system and cannot be withdrawn by the teachers until the retirement or death of the teacher. The law also provides circumstances where the teacher never receives any part of the employer’s contribution. Plaintiff argues that it cannot, therefore, be considered as salary or compensation for work performed, citing Maes v. City of New Orleans, 97 So.2d 856, 858 (La.App., 1957).
“ ‘The Board submits that the fringe benefit of a retirement system is within the overall scope of the definition of the word “salary” but doesn’t answer plaintiff’s argument that the teacher may never receive the employer’s contribution.
“ ‘The Court concludes that the employer’s contribution is in the nature of a bonus or gift to be received only on certain conditions happening and is not salary.
“ ‘The legislative scheme providing for funding of the Teachers’ Retirement System shows that the legislature considered and intended the employer’s contribution to be separate and apart from the salary of the teachers.
“ ‘R.S. 17:703, entitled “Collection of employer’s contribution: procedure”, sets forth the manner of calculating the employer’s contribution as follows:
“‘(3) The amount to be contributed by each employer shall be such percentage of the total annual compensation or salary of all teachers in his employ not included in a local pension fund . . .’ (Emphasis supplied)
“ ‘Sub-paragraph (7) of Section 703 provides :
“ ‘(7) In order to meet the financial requirements of this Part, employers shall cause to be deducted from the State Public School Fund, the income of the Louisiana State University, the income of the college under the control of the State Board of Education and the income of any other teacher employment agency employing public school teachers of the State, the amount necessary from these respective funds to meet the contribution that the employers shall make.’ (Emphasis supplied)
“It is thus seen that the employer’s contribution is calculated as a percentage of the total salary of the teacher with the total salary of the teacher being considered as a matter separate from the employer’s contribution.
“R.S. 702 entitled ‘Collection of Member Contributions; procedure’, Sub-paragraph (2) provides:
“‘(2) The treasurer of each employer shall make the deduction from salaries of teachers and shall transmit monthly .’ (Emphasis supplied)
“Thus when the Board deducts the teacher’s contribution to the Retirement System as relates to that portion of the teacher’s total salary coming from sales *603 tax revenues, it is paying to the Retirement System revenues which are a part of the teacher’s salary, but when it pays the employer’s contribution from the sales tax revenues, it is discharging its own obligation to make contributions to the Retirement System.
“In effect, if the Board’s present practice were allowed to continue, the teacher would be paying out of revenues provided solely for his salary not only his own contribution, but the employer’s contribution, too.
“It is also possible that at least some of the sales taxes paid by the citizens of Monroe for their teachers would ultimately wind up in the payment of retirement or death benefits to teachers in other parts of the State.
“This is contrary to the proposition approved by the electorate and the ordinance levying the sales tax.”
On this appeal the school board contends the trial judge was in error in finding that the employer’s contributions to the Teachers’ Retirement System did not form a part and parcel of the salary of the teachers as contemplated by use of the word "salary” in the proposition submitted to the people authorizing the levy of the sales tax for this purpose so that payment of the contributions could be made from proceeds of the tax. No complaint is made as to the nature of the relief granted should it be found plaintiff is entitled to judgment or on the attorney’s fees awarded plaintiff.
It is undisputed that tax revenues obtained from a special tax must be used for no other purpose than that stated in the proposition submitted to and approved by the electorate. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931).
The thrust of defendants’ argument on this appeal is that under the generally accepted meaning of the word “salary” there is included all .recompense or reward of whatever nature and kind that is received for services performed. Black’s Law Dictionary, 4th Edition, page 1503; 77 C.J.S., pages 553-554; Words & Phrases, Vol. 38, page 61. Defendants further rely on Morrissey v. Curran, 302 F.Supp. 32 (S.D.New York 1969), and Bridges v. City of Charlotte, 221 N.C. 472, 20 S.E.2d 825 (1942), in support of their position. We do not find either of these cases helpful to this issue as in the Morrissey case the court was construing a Union charter provision involving conflicting definitions of “salary” and “compensation”, and in the Bridges case the court found the payment from a retirement fund to be a payment of “salary” to uphold the constitutionality of payments as not being a payment of a gratuity from public funds.
In the case of Brasher v. Chenille, Inc., 251 So.2d 824 (La.App. 3rd Cir. 1971), our brethren of the Third Circuit had presented the question of whether payments by an employer of contributions to a pension plan under an employment contract were a part of the employee’s “salary”. The court regarded the contributions as a fringe benefit, more in the nature of hospital insurance, travel expense, etc., and not within the definition of “salary”. Although that case involved a penal statute (La.C.C. art. 2749) which must be construed strictly, we do consider it analogous to the instant case.
Under the scheme of the Teachers’ Retirement System, the employer’s contribution does not go to the credit of a particular teacher, thus no teacher has any vested right in this payment into the fund except upon death or retirement and the amount of the employer’s contribution is based upon the teacher’s total “salary”. For these reasons we do not see how the employer’s contribution could be construed to be a part of the teacher’s salary.
While we are sympathetic with the financial problem thrust upon the School Board, for which it is not to blame, we are of the opinion the trial judge has correctly *604 found the employer’s contribution is not a part of the “salary” of the teacher and should not be paid from the proceeds of the tax dedicated solely for the purpose of paying salaries.
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s costs.