Dear Rep. Doerge:
You requested the opinion of this office concerning whether the Webster Parish School Board (the "School Board") is required to pay the hospitalization insurance premiums for all of its retired employees.
You advised that on April 20, 1996, the voters approved a one percent (1%) sales and use tax to be levied by the School Board dedicated for (a) increased salaries and benefits for school employees; and "(b) after providing for the expenditures described in (a) above, any remaining proceeds shall be used for (i) paying the retiree portion of retired school employee hospitalization premiums, (ii) paying instructional programs and materials, and (iii) purchasing computer equipment and software . . ."
You further advised that records of the School Board and the Teachers' Retirement System reflect that there are currently 499 retirees of the School Board. The School Board is not paying the hospitalization premiums of 94 of the 499 retired employees. The School Board's position is that it has the discretion to decide to pay the hospitalization insurance premiums only for employees who have worked in the school system five consecutive years prior to retirement and have also been enrolled in one of the system's group hospitalization plans at least three consecutive years prior to their retirement date.
In addition to the information which you submitted with your opinion request, the School Board Superintendent furnished this office with a copy of the minutes of the February 5, 1996 meeting of the Sales Tax Committee which was approved by the School Board on February 13, 1996, when the School Board authorized the calling of the election to present the tax to the voters. These minutes contain great detail as to how the sales tax was to be divided. It is our understanding that there are not sufficient tax proceeds to fully fund every purpose for which the tax was dedicated, and that the criteria for allocating the tax proceeds including determining which retirees would have their hospitalization premiums paid was developed, at least in part, in recognition of that fact.
The minutes of the February 5, 1996 minutes of the Sales Tax Committee state with respect to the payment of hospitalization premiums in pertinent part as follows:
"A. Limit maximum cost of premiums to 9.7% of collections.
 B. Pay only SEGB premium or equivalent for single person or if both retired from school system, pay employee and one dependent class premium.
C. Eligibility
 1. Ten (10) consecutive years in school system immediately preceding retirement.
 2. Must have participated in one of three school board sponsored hospitalization plans three (3) consecutive years immediately preceding retirement.
 3. Retire five (5) years prior to making application for payment of premiums.
 D. Retiree will be solely responsible for making application to school board for payment of premiums. Initial date for consideration will be five (5) years after retirement date."
Your questions are whether the School Board's decision violates the tax proposition and/or constitutes unlawful discrimination against some retirees.
For the reasons set forth below, it is the opinion of this office that the School Board's actions are not violative of the tax proposition nor does it constitute unlawful discrimination against some retirees.
R.S. 33:2721.6(D) (5) provides with regards to sales taxes, in pertinent part, the following:
 "The proceeds of the tax shall be dedicated solely for the purposes approved by the electorate. . . ."
Furthermore, R.S. 39:704 states, in pertinent part:
 "The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used."
It has been consistently held by this office and the jurisprudence of this state that the scope of the authority for the expenditure of sales tax revenues is concomitant to the consent of the electorate. Accordingly, the ordinary sense of the words contained in the proposition is dispositive of their meaning for the electorate approving the tax. Police Jury of theParish of Acadia v. All Taxpayers, et al., 95-145 (La.App. 3d Cir. 3/29/95), 653 So.2d 94, rehearing denied; Hodnett, et al. v.Monroe City School Board, et al., 270 So.2d 598 (La.App. 2d Cir. 1972); Watkins v. Ouachita Parish School Board, 173 La. 259,136 So. 591 (1931); Attorney General Opinion Nos. 94-540, 94-346, 93-424, 93-47 and 92-50.
In Richland Parish Bus Drivers Association, et al. v.Richland Parish School Board, et al., 420 So.2d 696 (La.App. 2d Cir. 1982), after a sales tax dedicated to supplement the salaries of school employees passed, the School Board adopted an allocation formula for the proceeds. Suit was filed challenging the allocation formula. The court found that since the proposition did not specifically allocate the proceeds, the meaning of the proposition must be determined using general rules of statutory interpretation, and stated in pertinent part as follows:
 ". . . LSA-R.S. 17:81 provides the general powers of school boards. One of these powers is to hire teachers and to fix their salaries. Other sections in Title 17 authorize the Board to hire other special employees such as bus drivers. Since it is the Board's function to fix the salaries of school employees in general, the common understanding of the tax proposition should be that the Board should also have the discretion to allocate the proceeds of the sales tax to supplement such salaries.
 Another rule of statutory interpretation is the doctrine of contemporaneous construction. This doctrine provides that when an administrative body has placed an interpretation upon a legislative enactment over a long period of time, that interpretation is entitled to great weight. A school board legislates and administers its policy. Ouachita Parish School Board, supra; Washington v. St. Charles Parish School Board, 288 So.2d 321 (La. 1974).
* * *
 . . . Where an elected governing body is not restricted by law from exercising discretion in its actions, the actions of that body are presumed to have been made in good faith and in accord with law. Members of such a body are elected and are responsible to the will of the electorate. A court is justified in interfering with decisions of such a board only where it is clearly shown that the board has abused its legal authority and discretion. State v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (La. 1943); Celestine v. Lafayette Parish School Board, 284 So.2d 650
(La.App. 3d Cir. 1973). This is especially true where the school board's action is one of budgeting funds. See Kemp v. Jefferson Parish School Board, 305 So.2d 744 (La.App. 4th Cir. 1974), writ refused; Calloway v. Ouachita Parish School Board, 158 So.2d 360 (La.App. 2d Cir. 1963); and Mouras v. Jefferson Parish School Board, 300 So.2d 540 (La.App. 4th Cir. 1974)."
Considering the foregoing, it is the opinion of this office that it is not in contravention of the tax proposition for the School Board to adopt criteria to determine which retirees qualify for the receipt of hospitalization premiums. It is within the discretion of the School Board to allocate the proceeds of the tax, provided that they act in good faith and within the confines of the law and the tax proposition.
As to your question as to whether some retirees are unconstitutionally discriminated against, the School Board's classifications do not involve a suspect classification such as race or religion. Nor do we find that there is a fundamental personal right to the payment of hospitalization premiums.
If no suspect classification or fundamental right is involved, the issue is whether the classification created by the school board is rationally related to a legitimate state interest. Arguably the School Board's criteria is an economic regulation. When an economic regulation is challenged as violating the equal protection clause, courts may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. In the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. Lakeside Imports, Inc. v. State ofLouisiana, 94-0191 (La. 7/5/94), 639 So.2d 253 (La. 1994); Cityof New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513,49 L.Ed.2d 511 (1976); State ex rel. Guste v. K-Mart Corp., 462 So.2d 616
(La. 1985). It does not appear that the School Board is acting arbitrarily in limiting the retirees who receive hospitalization premiums and there appears to be a rational relationship between the classification of retirees and the legitimate state interest of allocating the proceeds of the tax among the various needs of the Webster Parish School System.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
Date Received:
Date Released:
Martha S. Hess Assistant Attorney General